IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

CHERYL CANTY-AARON           :

                                :
                                :    Civil Action File No.: 5:14-cv-300-CAR
     Plaintiff,           :

                                :
v.                                :    JURY TRIAL DEMANDED

                                :
BIBB COUNTY SCHOOL DISTRICT,   :
BIBB COUNTY BOARD OF         :
EDUCATION, and               :
DR. E. STEPHEN SMITH         :
in his official capacity as        :
superintendent of Bibb County School :
District                    :

                                :
     Defendants.          :

                                :

## COMPLAINT FOR DAMAGES

    **COMES NOW**, Cheryl Canty-Aaron ("Aaron" or "Plaintiff") and

through the undersigned counsel of record, files this Complaint for damages,

showing the Court as follows:

### Jurisdiction and Venue

1.

    Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. §1331 and

42 U.S.C. §2000e-5(f).

2.

The unlawful employment practices alleged in the Complaint were committed within this district. In accordance with 28 U.S.C. §1391 and 42 U.S.C. §2000e-5(f), Venue in this district and division, Middle District of Georgia, Macon Division, is proper.

## ADMINISTRATIVE PROCEDURES

3.

All conditions precedent to jurisdiction under Title VII have either occurred or been complied with; specifically, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The Notice of Right to Sue for Plaintiff's Charge was issued by the EEOC on May 13, 2014. Plaintiff has brought suit within 90 days of the receipt of the Notice of Right to Sue.

## PARTIES

4.

Plaintiff, an African -American female, 51 years of age, is now and was at all times relevant to this action, a citizen of the United States. During the time when the events giving rise to this lawsuit took place, Plaintiff was a resident of the State of Georgia, residing at 132 Brookfield Drive,

Macon, Georgia, 31210, and is subject to the jurisdiction of this Court.

5.

Defendant Bibb County School District is a body corporate having its principal place of business in Bibb County Georgia. The School District has the authority to be sued. The School District and the school system operated within its geographical boundaries are under the management and control of Defendant, Bibb County Board of Education.

6.

Defendant Dr. E. Stephen Smith, a White male, is Interim Superintendent of the Bibb County School District, who at all relevant times, was acting under color of law. Defendant Smith is sued in his official capacity as Superintendent.

7.

Defendants may be served with process by delivering a copy of the summons and complaint to Susan K. Sipe, President, Bibb County Board of Education, 484 Mulberry Street, Macon, GA 31201, and Defendant E.Stephen Smith may be served at the Bibb County School District, 484 Mulberry Street, Macon, GA 31201.

**Factual Allegations**

8.

Defendant Bibb County School District ("the School District") is a body under the management and control of Defendant Bibb County Board of Education (the "Board"), and has employed the requisite number of employees for the requisite duration under Title VII.

9.

Plaintiff began her employment with the School District on August 16, 2012, in the position of Capital Program Administrator. Plaintiff's appointment to this position was approved following a vote by the Board on July 19, 2012.

10.

At the time of Plaintiff's hiring, the Superintendent for the School District was Romain Dallemand ("Dallemand"), a Black male, who recommended Plaintiff for the position.

11.

Following Dallemand's departure from the position in February 2013, Susanne Griffin-Ziebart ("Ziebart"), a White female, was appointed Acting Superintendent.

12.

On or around June 3, 2013, Ziebart was officially replaced as Superintendent by Defendant Dr. E. Stephen Smith ("Smith"), a White male.

13.

Prior to Dallemand's departure from the Superintendent position, Plaintiff discussed several systemic race issues with Dallemand, including the lack of diversity within the 2010 Capital Improvement Program ("CIP"), and the discriminatory process of selecting local and minority participants.

14.

Dallemand empowered the Plaintiff to make programmatic changes to the CIP. Subsequently, Plaintiff implemented a new process of selection of professionals and consultants which would be inclusive of local and minority participants. At the same time, however, Dallemand warned the Plaintiff that such actions could put her job in jeopardy.

15.

Notwithstanding Dallemand's warning, Plaintiff discussed the problems of an all-white staff with Ziebart during her time as interim superintendent.

16.

During one such discussion, Ziebart told Plaintiff "she should be

looking for another job because she is Black just like Dallemand, and Dallemand is no longer there to protect her" and that "[Plaintiff] would be a fool not to be looking for other employment." Nevertheless, Plaintiff again voiced her concerns about race issues to the new superintendent, Defendant Smith.

17.

Subsequently, Plaintiff was informed that Smith had made the decision to place all projects under the Plaintiff's department, Capital Projects, and all other associated expenditures, "on hold". Plaintiff was effectively no longer able to enforce her new process, nor able to influence future contract awards.

18.

On or around June 20, 2013, Dave McMann ("McMann"), a White male, and former Capital Program Administrator for the Houston County School Board, was brought in as a consultant with the School District to review and "evaluate" Plaintiff's work regarding her job qualifications and capability of performing her duties. McMann was brought in at Smith's direction.

19.

In July, 2013, Plaintiff noticed that many of the preferred vendor lists had become comprised of all White vendors, with no minority representation whatsoever. She spoke with Smith about the preferential treatment given to White vendors, specifically Plaintiff pointed to a "preferred architects" list that was comprised of 100% White vendors.

20.

In response to Plaintiff's inquiries about the preferential treatment given to White vendors and concerns over general discriminatory behavior, Plaintiff's responsibilities were reduced to such a degree that she no longer had influence regarding the preferred vendors list. Further, Plaintiff found herself being excluded from business and administrative meetings in which she previously had had a prominent role.

21.

In approximately August, 2013, Jason Daniels ("Daniels"), a 39-year-old White male, who also worked at the Houston County School Board and had been supervised by the consultant Dave McMann, was hired by the School District to work "with" Plaintiff.

22.

Daniels was given the title of "Executive Director of Capital Programs", and told Plaintiff that her responsibilities would not change, but that she would no longer report directly to the Board, as that was now Daniel's responsibility.   Plaintiff would be given a new title of "Assistant Director of Capital Programs".

23.

However, immediately upon the start of his employment, Daniels began performing the same job responsibilities that Plaintiff had performed.

24.

Between summer 2013 and spring 2014, Plaintiff continued to voice her concerns over the preferential treatment given to White vendors, including the pretextual reasons given by the Board when selecting White vendors who were not the lowest bidders.

25.

As a result of her opposition to this discriminatory behavior, Plaintiff's duties were further reduced to the point that all her decision making responsibilities were given to Daniels, leaving Plaintiff to complete purely administrative work.

26.

On or about April 29, 2014, the Board informed Plaintiff that they were eliminating her position and that a new position was being created for her, with the title being "Safety Environmental Manager" (the New Position").

27.

Although created for her, Plaintiff was told that she had to apply for the New Position.  She was also told that her New Position would require asbestos certification , which Plaintiff did not have,  and was completely unrelated to her area of expertise.

28.

Additionally, Plaintiff was required to relinquish her office space and move her office to a warehouse and a recently closed welcome center.

29.

Finally, in or around June 2014, Plaintiff was also informed that her pay would be reduced by more than 50%.

30.

Upon completion of Plaintiff's demotion, Daniels was given the title "Executive Director of Capital Programs", which replaced Plaintiff's old position of "Capital Programs Administrator."  The job duties Plaintiff had

performed and the duties Daniels now performed were identical.

31.

After enduring this demeaning and discriminatory treatment for approximately two years, Plaintiff filed a complaint with the EEOC on May 5, 2014.

32.

As a result of the filing of her EEOC complaint, on or around June 24, 2014, Plaintiff was given an unfavorable Employee Evaluation Form, dated June 18, 2014, which was during the time Plaintiff was taking asbestos courses at Georgia State in order to obtain the required asbestos certification.

33.

The evaluation was never discussed with Plaintiff, but included a note telling Plaintiff to sign and return it, which Plaintiff refused to do. During the entire time Plaintiff worked as Capital Program Administrator, she received only positive reviews and was never reprimanded until she began complaining about race-related problems within the School District.

## COUNT ONE
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

34.

Plaintiff realleges and incorporates by reference each and every

preceding paragraph as if fully set forth herein.

35.

The relationship between Plaintiff and Defendant School District was a relationship of employee to employer within the meaning of 42 U.S.C. § 2000e *et seq.*, such that a cause of action exists where discrimination on the basis of race is alleged to be the causative agent of an adverse action directed to the employee by the employer.

36.

The ongoing discrimination to which Plaintiff was subjected to by Defendants because of her Race was in violation of 42 U.S.C. § 2000 et seq., thus entitling her to all appropriate relief provided under the statute.

37.

Defendants' persistent discriminatory acts such as replacing Plaintiff as Capital Program Administrator with a White male, demoting Plaintiff, decreasing Plaintiff's responsibilities, altering Plaintiff's responsibilities to include tasks that were completely unrelated to her areas of expertise, moving Plaintiff's from a traditional office to a warehouse, and significantly reducing Plaintiff's salary, constituted disparate treatment based on race, such that Defendants' intentional disparate treatment impacted Plaintiff's terms, conditions and privileges of employment.

38.

Defendants' actions were the products of unlawful racial animus on the part of Defendants. Defendants had no legitimate, non-discriminatory purpose, motive or intent to justify its actions against Plaintiff.

39.

Defendants intentionally, willfully and wantonly disregarded Plaintiff's rights as an employee and Defendants' discriminatory actions were undertaken in bad faith.

40.

As a direct and proximate result of Defendants' intentional and unlawful conduct, which was intended to cause Plaintiff harm, and/or was committed with reckless disregard of the harm caused to Plaintiff, and in derogation of her federally protected rights, Plaintiff has suffered and continues to suffer emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, danger to her reputation, and other past and future pecuniary losses.

## COUNT TWO
## RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C.1981

41.

Plaintiff realleges and incorporates by reference each and every preceding paragraph as if fully set forth herein.

42.

Defendants' actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of race in violation of 42 U.S.C. Section 1981.

43.

The effect of the conduct was to deprive Plaintiff of economic opportunities, and otherwise adversely affected Plaintiff's status as an employee, because of her race.

44.

As a direct and proximate result of these actions, Plaintiff has been made a victim of acts that adversely affect her psychological and physical well-being.

45.

Defendants willfully and wantonly disregarded Plaintiff's rights, and Defendants' discrimination against Plaintiff was undertaken in bad faith.

## COUNT THREE
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII

46.

Plaintiff realleges and incorporates by reference each and every preceding paragraph as if fully set forth herein.

47.

Under Title VII it is unlawful for an employer to discriminate against any individual with respect to his or her compensation, terms, conditions or privileges of employment because of such individual's sex.

48.

Defendants discriminated against Plaintiff because of her sex and because of sex-based stereotypes.

49.

Defendants' sex discrimination against Plaintiff includes, but is not limited to, demoting Plaintiff, decreasing Plaintiff's responsibilities, altering Plaintiff's responsibilities to include tasks that were completely unrelated to her areas of expertise, moving Plaintiff from a traditional office to a warehouse, and significantly reducing Plaintiff's salary, as well as replacing Plaintiff as Capital Program Administrator with a male.

50.

As a result of the unlawful conduct of the violations of Title VII's prohibition against sex discrimination, Plaintiff has suffered losses, including but not limited to, the constructive loss of employment, stripping of her accounts, denial of promotion, substantial loss of pay and benefits, and loss of reputation and emotional distress and physical distress.

51.

Plaintiff is entitled to a declaratory judgment that the actions of

Defendants violated Title VII and is entitled to other remedies, including,

but not limited to, back pay and benefits, front pay and benefits,

compensatory damages, punitive damages, interest, attorneys' fees and

costs.

## COUNT FOUR
## AGE DISCRIMINATION IN VIOLATION OF 29 U.S.C. §621

52.

Plaintiff re-alleges and incorporates by reference each and every

preceding paragraph as if fully set forth herein.

53.

Defendants subjected Plaintiff to discrimination in the terms and

conditions of her employment because of her age as described above.

54.

The discrimination described above violated Plaintiff's right to be free

from age discrimination in employment guaranteed to her by the Age

Discrimination in Employment Act of 1967, 29 U.S.C. §621, et. seq.

55.

Defendants, at all times relevant hereto, had actual and constructive

knowledge of the discriminatory conduct described above.

56.

Defendants failed to take reasonable steps to prevent the discrimination based on age from occurring.

57.

Defendants engaged in age discrimination by demoting Plaintiff, 51 years of age, and replacing her with Daniels, a White Male 39 years of age; decreasing Plaintiff's responsibilities, altering Plaintiff's responsibilities to include tasks that were completely unrelated to her areas of expertise, moving Plaintiff from a traditional office to a warehouse, and significantly reducing Plaintiff's salary for complaining about Defendant's discriminatory hiring practices, which was and is a protected activity.

58.

Defendants willfully disregarded Plaintiff's rights afforded her by the Age Discrimination in Employment Act, 29 U.S.C. §621, et. seq., entitling Plaintiff to recover treble damages.

59.

As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer loss of past and future earnings and other employment benefits and job opportunities. Plaintiff is, therefore, entitled to damages in an amount to be proven at trial.

60.

As a result of the unlawful conduct of the violations of 29 U.S.C.

§621, et seq., prohibition against age discrimination, Plaintiff has suffered

losses, including but not limited to, the constructive loss of employment,

stripping of her accounts, denial of promotion, substantial loss of pay and

benefits, and loss of reputation and emotional distress.

61.

Plaintiff is entitled to a judgment that the actions of Defendants

violated 29 U.S.C. §621, et seq., and is entitled to other remedies, including,

but not limited to, back pay and benefits, front pay and benefits,

compensatory damages, punitive damages, interest, attorneys' fees and

costs.

## COUNT FIVE

## AGE DISCRIMINATION IN VIOLATION OF TITLE VII

62.

Plaintiff realleges and incorporates by reference each and every

preceding paragraph as if fully set forth herein.

63.

Plaintiff , who is 51 years of age, continuously complained, and tried

to change, Defendant's discriminatory hiring practices.  Although Plaintiff

had always received positive performance evaluations, her responsibilities were decreased, along with her salary, and she was replaced by a younger white male, who slowly assumed all of her duties until he had fully taken over her position completely.

64.

Defendants' actions in subjecting Plaintiff to different terms and conditions of employment constitute unlawful discrimination on the basis of her age in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 USC 2000e et seq., and 42 USC Section 1981A.

65.

Defendants have willfully and wantonly disregarded Plaintiff's rights, and Defendants' discrimination against the plaintiff was undertaken in bad faith.                                       66.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and has otherwise adversely affected her status as an employee because of her age.

67.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

## COUNT SIX
## RETALIATION IN VIOLATION OF TITLE VII

68.

Plaintiff realleges and incorporates by reference each and every preceding paragraph as if fully set forth herein.

69.

After Plaintiff complained about race-related issues within the School District and after filing a charge of Discrimination with the EEOC, Defendants engaged in retaliation by demoting Plaintiff, decreasing Plaintiff's responsibilities, altering Plaintiff's responsibilities to include task that were completely unrelated to her areas of expertise, moving Plaintiff's from a traditional office to a warehouse, and significantly reducing Plaintiff's salary for complaining about Defendant's discriminatory hiring practices and thereby engaging in protected activity and opposing illegal activity.

70.

Defendants engaged in unlawful retaliation against Plaintiff, in violation of 42 U.S.C. § 2000e et seq., Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

71.

Defendants' retaliatory conduct, in violation of Title VII, caused

Plaintiff to suffer a loss of pay, benefits, and prestige.

72.

Defendants' intentional and illegal conduct caused Plaintiff to suffer mental and emotional distress entitling her to compensatory and punitive damages pursuant to 42 U.S.C. § 1981a.

## COUNT SEVEN
## DISCRIMINATION IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1991

73.

Plaintiff realleges and incorporates by reference each and every preceding paragraph as if fully set forth herein.

74.

Defendants discriminated against Plaintiff, and in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices has not only deprived Plaintiff of equal employment opportunities, but exhibits malice or reckless indifference to the federally protected rights of Plaintiff.

75.

Plaintiff thus seeks compensatory and punitive damages pursuant to Section 102(a)(1) of the Civil Rights Act of 1991.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for judgment against Defendant as follows:

(a)   Defendants be permanently enjoined from discriminating against Plaintiff on any basis forbidden by Title VII;

(b)   Defendants be permanently enjoined from discriminating against Plaintiff on any basis forbidden by 29 U.S.C. § 621 *et seq.*

(c)   Defendants be ordered to pay Plaintiff back pay in an amount to compensate Plaintiff for lost wages;

(d)   Defendants be ordered to reinstate Plaintiff to an equivalent or greater position as that held by Plaintiff at the time of her termination;

(e)   Defendants be ordered to compensate, reimburse and make whole Plaintiff for all the benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to: pay, benefits, insurance costs, training, promotions and seniority;

(f)   Plaintiff be awarded compensatory damages

# CHERYL J. CANTY-AARON

# EEOC NOTICE OF RIGHT TO SUE

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | From: |
|---|---|
| Cheryl J. Canty-Aaron<br>132 Brookefield Drive<br>Macon, GA 31210 | Atlanta District Office<br>100 Alabama Street, S.W,<br>Suite 4R30<br>Atlanta, GA 30303 |

|   | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |   |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 410-2014-03415 | Twanda L. Pressey,<br>Investigator | (404) 562-6862 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[X]   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other (briefly state)

- **NOTICE OF SUIT RIGHTS -**
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

MAY 1 6 2014

Bernice  Williams-Kimbrough,
District Director

*(Date Mailed)*

Enclosures(s)

cc:   Myra Abrams
Director, Human Resources
Bibb County Board of Education
484 Mulberry Street
Macon, GA 31201

(g)    Plaintiff be awarded punitive damages;

(h)    Plaintiff recover reasonable attorney's fees including litigation

expenses and costs;

(i)    Plaintiff recover interest on the back pay at the legal rate; and

Such other relief as the Court deems proper and just.

### **Jury Demand**

Plaintiff herein requests trial by jury of all issues in this action.


Respectfully submitted this 15th day of August, 2014.

**MOLDEN & HOLLEY, LLC**

s/ Regina S. Molden
Regina S. Molden
Georgia Bar No. 515454
Peachtree Center – Harris Tower
233 Peachtree Street, N.E. Suite 1245
Atlanta, Georgia 30303
Telephone: (404) 324-4500
Facsimile: (404) 324-4501
Email: rmolden@moldenholley.com
Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that Plaintiff's Complaint for Damages complies with the type-volume limitations set forth in Rule 5.1 of the Local Rules of the Northern District of Georgia. Counsel hereby states that Plaintiff's Complaint for Damages has been typed in Times New Roman 14 point.

This 15th day of August, 2014.

/s/ Regina S. Molden
Regina S. Molden
Georgia Bar No. 515454