IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **CHERYL CANTY-AARON,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **V.** | : | |
| | : | **No. 5:14-CV-300 (CAR)** |
| **BIBB COUNTY SCHOOL DISTRICT,** | : | |
| **BIBB COUNTY BOARD OF** | : | |
| **EDUCATION, and DR. E. STEPHEN** | : | |
| **SMITH, in his official capacity as** | : | |
| **Superintendent of Bibb County** | : | |
| **School District,** | : | |
| **Defendants.** | : | |
| | : | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Presently before the Court is Defendants Bibb County School District (the "School District"), Bibb County Board of Education, otherwise known as the Board of Public Education for Bibb County, and Dr. E. Stephen Smith, formerly the interim Superintendent of the Bibb County School District's (hereinafter "Defendants") Motion for Summary Judgment [Doc. 22].[1]  Plaintiff Cheryl Canty-Aaron contends Defendants

---

[1] Plaintiff brings Title VII claims against Defendant Dr. Smith in his official capacity as interim Superintendent of the Bibb County School District. Claims brought under Title VII may only be brought against the employer because "[t]he relief granted under Title VII is against the employer, not individual employees whose actions constitute a violation of the Act." *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) ("Individual capacity suits under Title VII are … inappropriate."). The parties do not dispute that the District is Plaintiff's employer. Accordingly, the Court construes Plaintiff's Title VII claims against Dr. Smith in his official capacity as claims against the District. *See Johnson v. Bibb Cnty. Bd. Of Educ.*, No. 5:07-CV-425(CDL), 2009 WL 1885052, *6 (M.D. Ga. June 29, 2009). Therefore, Dr. Smith in his official capacity is entitled to summary judgment on Plaintiff's Title VII Claims. Additionally, if

discriminated against her because of her race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII") and 42 U.S.C. § 1981; her sex in violation of Title VII; and her age, in violation of Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq. ("ADEA"). Additionally, Plaintiff claims Defendants demoted her and gave her a poor performance review in retaliation for her complaints about discriminatory practices and filing an EEOC charge in violation of Title VII.  After fully considering the matter, the Court finds Defendants are entitled to judgment as a matter of law, and their Motion for Summary Judgment [Doc. 22] is hereby **GRANTED**.

## STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[3]  Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving

---

Plaintiff intended to bring claims against Dr. Smith in his individual capacity, Title VII does not impose individual liability and summary judgment is appropriate. *See Johnson*, No. 5:07-CV-425(CDL), 2009 WL 1885052, at *6 ("[I]t is well established that Title VII does not impose individual liability.").

[2] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

party or, in other words, if reasonable minds could not differ as to the verdict.[4]  When ruling on a motion for summary judgment, the Court must view the facts in the light most favorable to the party opposing the motion.[5]

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[6]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact.[7]  This evidence must consist of more than mere conclusory allegations or legal conclusions.[8]

## BACKGROUND

Plaintiff, a 51-year-old African-American woman began working for the School District on August 16, 2012, as the Capitol Program Administrator.  At the time Plaintiff was hired, Dr. Romain Dallemand, an African-American male, was Superintendent. As Capitol Program Administrator, Plaintiff was responsible for preparing the Local

---

[4] *See id.* at 249-52.
[5] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).
[6] *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).
[7] *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.*, 477 U.S. at 324-26.
[8] *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

Facilities Plan ("LFP") for 2013-2018.[9]  The LFP is a comprehensive plan prepared and submitted every five years.[10] The LFP must be submitted on time to the Georgia Department of Education because if it is late, select entitlement funds become unavailable to the School District.[11] Plaintiff knew the LFP was due June 30, 2013, and was aware of the Department of Education's requirements for a completed LFP.[12]

**Plaintiff's Work on the LFP**

Shortly after starting at the School District, Plaintiff began working on the LFP with a consultant from the Georgia Department of Education, Leonard McCoy.[13] Plaintiff received advice on the LFP from John Ramage, who also worked for the Georgia Department of Education. Ramage advised Plaintiff that to complete the LFP she would need to hire a construction or an architectural firm to perform a needs assessment.[14]  Ramage suggested the firm of Manley Spangler Smith Architects, P.C.[15]

In mid-October, Manley Spangler submitted a proposal to perform the needs assessment, and Plaintiff told Manley Spangler the Board accepted their proposal.[16] However, when the firm was presented with the contract, they refused to sign.[17]

---

[9] Pl's Dep., [Doc. 21] at 134.
[10] Pl's Dep., [Doc. 21] at 129.
[11] Pl's Dep., [Doc. 21] at 130; *see also* Pl's Stat. of Facts, [Doc. 24] at 3.
[12] Pl's Stat. of Facts, [Doc. 24] at 3; Pl's Dep., [Doc. 21] at 124.
[13] Pl's Dep., [Doc. 21] at 132.
[14] Pl's Dep., [Doc. 21] at 136.
[15] Pl's Decl., [Doc. 24-1] at 2.
[16] Pl's Dep., [Doc 21] at 141-42.
[17] Pl's Dep., [Doc. 21] at 140, 148.

Plaintiff sought advice from the School District's attorney, who recommended she secure a contract with Manley Spangler before moving forward.[18]   Because Manley Spangler refused to sign the contract, in late October, Plaintiff decided to open up the biding process to other firms.[19]

In November, McCoy first mentioned to Plaintiff she could seek a one year extension on the LFP.[20]   In January of 2013, McCoy expressed that he had "become concerned" she would not be able to complete the LFP, since she had not secured an architectural firm.[21]   Again, McCoy spoke with Plaintiff about the option available to the School District to seek a one-year extension of the LFP. He told Plaintiff two other schools he was working with had requested extensions, but the deadline for an extension was March 15, 2013. Plaintiff said McCoy told her that "the School District would not lose funding if the extension was requested and granted."[22]   In February, Plaintiff recommended to the Board that they approve a request for an extension because the completed LFP would not be ready by the March 15 deadline.[23] The Board approved Plaintiff's request, and on February 28, 2013, Plaintiff sought an extension

---

[18] Pl's Dep., [Doc. 21] at 149.
[19] Pl's Dep., [Doc. 21] at 148.
[20] Pl's Dep., [Doc. 21] at 192.
[21] Letter to Pl., [Doc. 24-1] at 51.
[22] Pl's Stat. of Facts, [Doc. 24] at 8; *see also* Pl's Decl. [Doc. 24-1] at 4. The Court notes that Defendants object to this statement as hearsay, see discussion *infra*.
[23] Pl's Dep., [Doc. 21] at 196.

from the Georgia Department of Education, which was granted.[24] Because of the extension, Defendants claim the School District lost $1.3 million dollars in entitlement funds.[25] Plaintiff asserts "the one year extension of the LFP did not result in the financial loss of $1.3M [sic] to the School District."[26] She says, "[i]n conversations with the Superintendent, Acting Superintendent, Interim Superintendent, Chief Financial Officer, Director of Accounting, Deputy Superintendent of Operations, or the Executive Director of Capital Programs, this information was never relayed to me."[27]

**Plaintiff Expresses Concern about the Vendor List**

After requesting the extension on the LFP, Plaintiff continued to work on the LFP and securing an architectural firm. Plaintiff was intent on diversifying the School District's vendor list and remedying other discriminatory practices. She claims Dr. Dallemand, an African-American male and the Superintendent at the time, told her that contracts had not been awarded to minorities in the past.[28] One way she sought to remedy this was by "[getting] rid of the list of design professionals that was comprised of all white architects."[29] She says she made the selection "process open and fair" and pre-qualified and interviewed seven architectural firms.[30]

---

[24] Pl's Decl., [Doc. 24-1] at 4.
[25] Smith Dep., [Doc. 21-10] at 17.
[26] Pl's Decl., [Doc. 24-1] at 4.
[27] Pl's Decl., [Doc. 24-1] at 4.
[28] Pl's Dep., [Doc. 21] at 116.
[29] Pl's Dep., [Doc. 21] at 117.
[30] Pl's Dep., [Doc. 21] at 117, Pl's Decl., [Doc. 24-1] at 3.

6

Dr. Dallemand was terminated on February 25, 2013, and Dr. Steven Smith was appointed as Interim Superintendent on April 30, 2013.  In July, Plaintiff says she met with Dr. Smith and expressed her concerns about the preferential treatment given to white vendors and discussed her "concerns regarding race relations."[31] Dr. Smith does not recall this conversation with Plaintiff. However, despite her complaints to Dr. Smith, Plaintiff contends she and the selection committee were "forced" by Dr. Smith to award the needs assessment contract to Manley Spangler, an "all-white firm."[32] On July 18, 2013, Plaintiff recommended the Board approve Manley Spangler.[33]

**Plaintiff's Performance**

When Dr. Smith was appointed to the position of Interim Superintendent, he says the Board expressed concerns to him about Plaintiff's "ability to effectively lead" her Department.[34] Plaintiff, however, contends she had support from the Board, and there was a conspiracy to replace Dr. Dallemand's staff.[35] Dr. Smith brought in a consultant to assess Plaintiff and her Department, and the consultant told him Plaintiff was unable "to perform the duties of that department."[36]

---

[31] Pl's Decl., [Doc. 24-1] at 6, 7.
[32] Pl' Stat. of Facts, [Doc. 24] at 5.
[33] Pl's Dep., [Doc. 21] at 208.
[34] Smith Dep., [Doc. 21-10] at 28.
[35] Pl's Stat. of Facts., [Doc. 24] at 14; Pl's Dec. [Doc. 24-1] at 5.
[36] Smith Dep., [Doc. 21-10] at 30.

On several occasions, School District level administrators met with Plaintiff to discuss their concerns regarding Plaintiff's interactions with her staff.[37] Plaintiff says she experienced resistance from her staff because she tried to "administer the program" and implement changes, such as making her staff work in a timely manner and take appropriate leave time.[38] Plaintiff, contends her staff began to "conspire against her" when she started to change the "protocol in the office."[39]

Dr. Smith became particularly concerned about Plaintiff when he realized the "five-year facilities plan had not been completed in a timely manner," and this had cost the School District $1.3 million dollars in entitlement funding.[40] However, Plaintiff contends she was never told about any financial loss to the School District.[41] Additionally, Dr. Smith says a SPLOST audit revealed that financial status reports had not been filed from July 2012 to June 2013. These reports effect the reliability of information reported to the Board,[42] and, Defendants contend, Plaintiff was responsible for filing the reports. Plaintiff, however, contends the Director of Accounting prepared these reports, and she only "consulted with the Director of Accounting to monitor budget expenditures."[43]

---

[37] Pl's Stat. of Facts, [Doc. 24] at 11.
[38] Pl's Dep., [Doc. 21] at 214; Pl's Stat. of Facts, [Doc. 24] at 11-12.
[39] Pl's Dep., [Doc. 21] at 215.
[40] Smith Dep., [Doc. 21-10] at 17.
[41] Pl's Stat. of Facts, [Doc. 24] at 9, 14.
[42] Smith Dep., [Doc. 21-10] at 37-38.
[43] Pl's Decl., [Doc. 24-1] at 4.

**Plaintiff's Reduction in Responsibilities and Demotion**

In August, around one month after Plaintiff alleges she met with Dr. Smith about the vendor list, Dr. Smith appointed Jason Daniel, a white, 39-year-old male to the position of Executive Director of Capital Programs. Plaintiff contends she was told her responsibilities would not change, but Dr. Smith said he told Plaintiff Daniels was now her supervisor.[44]  When Daniels was hired, Plaintiff's responsibilities were reduced, and she was excluded from construction matters.[45]

Around April 2014, the School District claims it was facing budgetary constraints, and Dr. Smith said he recommended each department make spending cuts.[46] Plaintiff disputes that there was a need for cuts in her Department, but Daniels recommended that Plaintiff's position as Capitol Program Administrator be cut as part of the School District's Reduction in Force cuts.[47] Dr. Smith agreed and felt Plaintiff "lacked the necessary skills and knowledge to do an adequate job" within the Department.[48] On April 29, 2014, the Board informed Plaintiff the School District was eliminating her position, and a new position, Safety Environmental Manager, was being created for her.[49] Plaintiff's new position was paid significantly less than her original

---

[44] *See* Smith Dep., [Doc. 21-10] at 20-21.
[45] Pl's Dec., [Doc. 24-1] at 6.
[46] Smith Dep., [Doc. 21-10] at 22.
[47] *See* Smith Dep., [Doc. 21-10] at 22.
[48] Smith Dep., [Doc. 21-10] at 22.
[49] Pl's Resp. Br., [Doc. 23] at 3.

position. On May 5, 2014, Plaintiff filed an EEOC charge. On June 24, 2014, Plaintiff received her first negative performance evaluation.

## DISCUSSION

Plaintiff claims Defendants discriminated against her because of her race, sex, and age and retaliated against her by reducing her responsibilities and demoting her in violation of Title VII. Plaintiff further alleges race discrimination in violation of 42 U.S.C. § 1981 and age discrimination in violation of the ADEA.[50]

### 1. Discrimination Claims

Claims of discrimination based on circumstantial evidence, as is the case here, are evaluated under the burden-shifting framework developed in *McDonnell Douglas Corp. v. Green*.[51]  First, a plaintiff must establish a *prima facie* case, or "facts adequate to permit an inference of discrimination."[52]  If the plaintiff does so, the burden then shifts to the employer to articulate some legitimate, non-discriminatory reason for its action.[53] If the employer meets this burden, the plaintiff then has an opportunity to show that the

---

[50] The Court recognizes Plaintiff asserts a discrimination claim under the 1991 Civil Rights Act; however, the Civil Rights Act of 1991 did not create a distinct claim of discrimination outside of Title VII and §1981. Rather, it expanded a plaintiff's ability to seek recourse under both § 1981 and Title VII. *Lightner v. Town of Ariton, Ala.,* 902 F. Supp. 1489, 1495 (M.D. Ala. 1995); *see also Goldsmith v. City of Atmore,* 996 F.2d 1155, 1159 (11th Cir. 1993) (noting that the provisions of the 1991 Act, "(1) expand the causes of action under section 1981, (2) grant the right of trial by jury in Title VII cases, and (3) allow plaintiffs to recover compensatory and punitive damages for Title VII claims").
[51] 411 U.S. 792 (1973).
[52] *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).
[53] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

employer's proffered reasons for the adverse employment action were merely pretext for discrimination.[54]

### A.  *Prima Facie Case*

As an initial matter, the Court notes discrimination claims brought under section 1981 "have the same requirements of proof and [use] the same analytical framework" as claims brought pursuant to Title VII.[55] Title VII makes it unlawful for an employer to "fail or refuse to hire or [ ] discharge any individual, or otherwise [ ] discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]"[56]

To establish a *prima facie* case of discrimination Plaintiff must produce circumstantial evidence showing she (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less favorably than a similarly situated individual outside her protected class or was replaced by a person outside of her protected class.[57] These elements mirror those required to establish sex[58] discrimination claims under Title VII, as well as an age

---

[54] *Id.* at 253.

[55]  *Springer v. Convergys Customer Mgmt. Group*, 509 F.3d 1344, 1347 n.1 (11th Cir. 2007).

[56] 42 U.S.C. § 2000e-2(a)(1).

[57] *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003).

[58] *Maniccia v. Brown*, 171 F. 3d 1364, 1368 (11th Cir. 1999) (finding that to establish a *prima facie* case of sex discrimination plaintiff must show "(1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job").

discrimination claim under the ADEA.[59] Defendants concede Plaintiff has established her *prima facie* case as to each of her discrimination claims.[60] Therefore, the burden now shifts to Defendants to articulate a legitimate, nondiscriminatory reason for reducing Plaintiff's responsibilities and demoting her.

### B.  Legitimate Nondiscriminatory Reasons

The burden on Defendants for providing legitimate nondiscriminatory reasons is one of production, not persuasion, and Defendants need only produce credible evidence supporting the decision.[61]  Defendants give three reasons as to why Plaintiff's responsibilities were reduced, and she was ultimately demoted: 1) she caused the School District to lose $1.3 million dollars in entitlements by not filing the completed LFP in time; 2) she failed to properly manage SPLOST funds; and 3) she was unable to work with her own staff. These are certainly reasons "that might motivate a reasonable employer."[62]  Thus, Defendants have met their "exceedingly light" burden of producing

---

[59] *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc) (Plaintiff can "establish a *prima facie* case for an ADEA violation [] by showing that [s]he (1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual."); *see also Kelliher v. Veneman*, 313 F. 3d 1270, 1275 (11th Cir. 2002).

[60] Defs' MSJ Br., [Doc. 22-1] at 6.

[61] *Chapman*, 229 F.3d at 1024 ("However, the employer's burden is merely one of production; it need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." (internal quotation marks omitted)).

[62] *Id.* at 1030.

a legitimate non-discriminatory reason, and the burden now shifts to the Plaintiff to establish pretext.[63]

**C. *Pretext***

To establish pretext a "plaintiff must demonstrate that the proffered reason was not the true reason for the employment decision.... [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."[64]  However, "if the employer proffers more than one legitimate nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment."[65]  "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered ... evidence of legitimate, non-discriminatory reasons for its actions."[66]  Evidence establishing pretext may include the same evidence initially offered to establish the *prima facie* case of discrimination.[67]

The Court finds Plaintiff is unable to rebut Defendants' legitimate non-discriminatory reasons for Plaintiff's reduction in responsibilities and demotion.

---

[63] *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769-770 (11th Cir. 2005).

[64] *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (emphasis added) (internal quotation marks and citation omitted).

[65] *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007).

[66] *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (internal quotation marks and citation omitted).

[67] *Wilson v. B.E. Aerospace*, 376 F.3d 1079, 1088 (11th Cir.2004).

Plaintiff simply denies the validity of Defendants' reasons and fails to show they are unworthy of credence.[68] "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute h[er] business judgment for that of the employer."[69] The pretext inquiry centers around the employer's beliefs, and Plaintiff must show more than the proffered reasons were ill-founded.[70] Specifically, if "the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and [he] cannot succeed by simply quarreling with the wisdom of that reason."[71]

First, Plaintiff denies the School District lost money because she sought an extension.  She contends no one told her the School District lost money, and "[she] has no evidence or knowledge that such a penalty was ever imposed against the [School District]."[72] Plaintiff's direct knowledge, however, as to whether the School District lost money is insufficient to rebut Defendants' belief that they did lose money because of

---

[68] *See Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.,* 446 F.3d 1160, 1163 (11th Cir. 2006) ("A reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." (internal quotation marks omitted)).

[69] *Chapman,* 229 F.3d at 1030.

[70] *See Alvarez v. Royal Atlantic Developers, Inc.,* 610 F.3d 1253, 1266 (11th Cir. 2010).

[71] *Chapman,* 229 F.3d at 1030; *see also Nix v. WLCY Radio/Rehall Communications,* 738 F.2d 1181, 1187 (11th Cir. 1984) ("[An] employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.").

[72] Pl's Decl., [Doc. 24-1] at 5.

Plaintiff's actions or lack thereof.[73] Even if there is truly a dispute over this fact, Plaintiff presents no evidence that Defendants did not believe her actions caused the $1.3 million dollar loss. Additionally, Plaintiff points to McCoy's statements that she should not only ask for an extension, but the School District would not lose entitlement money if they did so.[74] Even considering Plaintiff's statement that McCoy told her the School District would not lose money as admissible evidence,[75] it is simply irrelevant and insufficient to rebut Dr. Smith's legitimate belief that she caused the School District to lose over one million dollars in entitlement funds.[76]

Plaintiff also cannot rebut Defendants' second legitimate reason for her reduced responsibilities and demotion: her failure to properly manage the SPLOST funds. She asserts the Director of Accounting compiled these reports, and she only worked with the Director of Accounting to monitor budget reports.[77] However, regardless of her specific job responsibilities over the SPLOST funds, an independent audit revealed the reports had not been compiled during Plaintiff's tenure, and Plaintiff admits, failure to

---

[73] *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (inquiry is limited to whether employer believed plaintiff was guilty of misconduct and if so, whether that was reason behind discharge; that employee did not actually engage in misconduct is irrelevant).

[74] Pl's Resp. Br., [Doc. 23] at 5.

[75] Defendants contend Plaintiff's statement that McCoy told her the School District would not lose money if she sought an extension is hearsay, and, therefore, the Court should not consider it. Although the general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 193-94 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322, 1323 (11th Cir. 1999)).

[76] *Elrod*, 939 F.2d at 1470.

[77] Pl's Stat. of Facts, [Doc. 24] at 10.

compile the reports potentially jeopardized the School District.[78] Plaintiff's quarrelling with Defendants' reason is simply not enough to show pretext.

Additionally, Plaintiff cannot rebut Defendants' third legitimate non-discriminatory reason. Plaintiff concedes she had issues with her staff, and Defendants had to meet with her on several occasions to address staffing issues.[79] However, her argument that these issues were due to the staff's opposition to her changes to the "program,"[80] does not rebut Defendants' belief that she was unable to work with her staff.

Finally, Plaintiff cannot establish any discrimination based on the "mosaic" theory articulated in *Smith v. Lockheed-Martin Corporation*.[81] In *Lockheed-Martin*, the Eleventh Circuit reiterated that "establishing the elements of the *McDonnell Douglas* framework is not, and was never intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case."[82] Rather, the court noted that a plaintiff may present a triable issue if she establishes "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."[83]

---

[78] Pl's Stat. of Facts, [Doc. 24] at 10-11.

[79] Pl's Stat. of Facts, [Doc. 24] at 11.

[80] Pl's Dep., [Doc. 21] at 214.

[81] 644 F.3d 1321 (11th Cir. 2011).

[82] *Id.* at 1328.

[83] *Id.*

Plaintiff claims Dr. Smith and the Board conspired to replace her and the majority of Dr. Dallemand's African-American administrators.[84]  Plaintiff also contends a Board member told her she was replaced because Dr. Smith preferred Daniels and wanted to replace her as soon as Dr. Smith began his duties as Interim Superintendent—not due to any deficiencies in her performance.[85] However, such vague allegations and contentions are insufficient to establish "a convincing mosaic of circumstantial evidence" of discrimination.[86] Moreover, Plaintiff fails to rebut each of Defendants' reasons head on by showing that Defendants' reasons were "false and that the real reason was impermissible […] discrimination."[87]

This Court does not sit as a "super-personnel department," and it does not review the wisdom of an employer's business decisions.[88]  Ultimately, Plaintiff does not point out any real "weaknesses, implausibilities, inconsistencies, or contradictions" showing Defendants' legitimate non-discriminatory reasons to be unworthy of credence, nor has she shown any facts from which discrimination on the basis of race,

---

[84] Pl's Decl., [Doc. 24-1] at 5-6.

[85] Pl's Decl., [Doc. 24-1] at 7. The Court notes that Defendants object to Plaintiff's statements as hearsay, and, therefore, they should not be considered by the Court. Defs. Reply Br., [Doc. 25] at 2-3. As noted above, the Court can consider hearsay statements if they could be reduced to admissible form. *See Jones*, 683 F.3d at 1293-94 (quoting *Macuba*, 193 F.3d at 1322, 1323).

[86] *See Lockheed-Martin*, 644 F.3d at 1329–30 (finding an inference of discrimination was raised where there was substantial evidence of discriminatory animus, including documented racial tensions following a workplace shooting resulting from racism against black employees).

[87] *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993); *see also Redd v. United Parcel Serv., Inc.*, 615 F. App'x 598, 604 (11th Cir. 2015)

[88] *See Alvarez*, 610 F.3d at 1266-67 (the "question is whether her employers were dissatisfied with her for [ ] non-discriminatory reasons, even if mistakenly or unfairly so").

sex, or age could be inferred.[89]  Therefore, based on the evidence presented, Plaintiff has failed to show there was a genuine issue of material fact as to whether Defendants' reasons for Plaintiff's reduction of responsibilities and demotion were pretextual.[90] Because Plaintiff has failed to establish her claims of race, sex, and age discrimination, Defendants are entitled to judgment as a matter of law on all of these claims.

2. **Retaliation Claims**

Parallel to her discrimination claims, Plaintiff alleges Defendants unlawfully retaliated against her by reducing her responsibilities and demoting her because she opposed the School District's preference for an all-white vendors' list and for speaking out about the School District's discriminatory practices.  Plaintiff also claims she was retaliated against for filing an EEOC charge when she was given a poor performance review. In a cursory manner, Defendants contend Plaintiff fails to make out her retaliation claims.  Although the Court agrees Plaintiff cannot make out her retaliation claims, the Court notes Defendants' briefing on these claims was perfunctory, leaving much to be desired.

---

[89] *See Holland v. Gee*, 677 F.3d 1047, 1055–56 (11th Cir. 2012).
[90] *See Jackson*, 405 F.3d at 1291 (granting summary judgment for the employer because plaintiff failed to point "to evidence that created a genuine issue that the reasons that the Board gave were false or that a discriminatory reason was more likely the cause of his termination.")

Retaliation claims follow the same *McDonnell Douglas* burden-shifting framework outlined above.[91]  However, in order to establish a claim of retaliation under Title VII, a plaintiff must prove (1) she engaged in statutorily protected activity, (2) she suffered a materially adverse action, and (3) there is a causal relation between the two events.[92] Moreover, it is up to the employee to prove that "the desire to retaliate was the but-for cause of the challenged employment action."[93]

Title VII makes it illegal for "an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[94] Plaintiff makes out the first element of her *prima facie* case as to both of her retaliation claims; she engaged in protected activity by opposing discrimination in the vendor's list and by filing an EEOC complaint. However, as explained below, Plaintiff cannot sustain her retaliation claims.

### A. Plaintiff's Complaint to Dr. Smith

---

[91] 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010). Although Plaintiff separately brings her retaliatory termination claims under Title VII and Section 1981, as noted above, the Court's analysis of claims under these statutes is the same.

[92] *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

[93] *Booth v. Pasco Cnty., Fla.*, 757 F.3d 1198, 1207 (11th Cir. 2014) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, —U.S.—, 133 S. Ct. 2517, 2528, 186 L.Ed.2d 503 (2013)).

[94] 42 U.S.C. § 2000e–3(a).

Plaintiff claims she was retaliated against approximately one month after expressing concerns to Dr. Smith about the white vendor's lists. To establish a causal connection, a plaintiff must show the decision maker was aware of the protected conduct, and the protected activity and adverse action were not wholly unrelated.[95] Additionally, "a plaintiff must also show that retaliatory animus was the but-for cause of the challenged adverse action."[96] A plaintiff may show causation between the protected expression and an adverse action if they are in "close temporal proximity."[97] However, mere temporal proximity must be "very close."[98]

Even assuming arguendo Plaintiff established her *prima facie* case, her claim that her reduction in responsibilities was retaliatory fails. Defendants have proffered the same legitimate non-discriminatory reasons as outlined above, and for the same reasons set forth above, the Court finds Plaintiff fails to rebut each of these reasons head on and establish pretext. Here, Plaintiff relies on temporal proximity to establish a causal connection. She argues Dr. Smith reduced her responsibilities and hired Daniels as her supervisor approximately one month after she complained to Dr. Smith; eight months

---

[95] *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013).

[96] *Booth*, 757 F.3d at 1207. The Court recognizes that the Eleventh Circuit has yet to establish a clear precedent as to which stage that "but for" causation should be applied. *See Hawkins v. BBVA Compass Bancshares, Inc.*, No. 14-14480, 2015 WL 3462294, at *7 (11th Cir. June 2, 2015) (applying "but for" at the *prima facie* stage); *Mealing v. Georgia Dep't of Juvenile Justice*, 564 F. App'x 421, 427 (11th Cir. 2014) *cert. denied*, 135 S. Ct. 1165 (2015) (applying "but for" at the pretext stage); *Ramirez v. Bausch & Lomb, Inc.*, 546 F. App'x 829, 833 (11th Cir. 2013) (noting that the *Nassar* Court did not clarify the role of "but for" causation in a plaintiff's *prima facie* case).

[97] *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).

[98] *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

later she was demoted. First, the Court notes that eight months is simply too attenuated to support causation.[99] Second, although the Court recognizes the one month timeframe presented by Plaintiff is very close, and may be sufficient to establish a *prima facie* case, it is not sufficient without more to establish pretext.[100] Moreover, Plaintiff fails to meet her ultimate burden of but-for causation.[101] Thus, Plaintiff fails to show but-for her complaint to Dr. Smith her responsibilities would not have been reduced and given to Daniels.

### B. *Plaintiff's EEOC Charge*

Plaintiff's second claim of retaliation, that Defendants' gave her a poor performance review around six weeks after she filed an EEOC charge, fails because she

---

[99] *Id*. at 1364 (holding a three to four month disparity between the statutorily protected expression and the adverse employment action was not enough).

[100] The Eleventh Circuit has noted close temporal proximity without more, may not be sufficient to establish pretext. *See Hurlbert v. St. Mary's Health Care Sys., Inc.,* 439 F.3d 1286, 1298 (11th Cir. 2006) (noting two week temporal proximity "is probably insufficient to establish pretext by itself"); *see also Wascura v. City of South Miami,* 257 F.3d 1238, 1244–45 (11th Cir. 2001) (noting an over three month claim of temporal proximity is, standing alone, insufficient to establish pretext); *see also Hernandez v. Yellow Transp., Inc.,* 670 F.3d 644, 658 (5th Cir. 2012) (noting to defeat a motion for summary judgment, a plaintiff must demonstrate "a conflict in substantial evidence on [the] ultimate issue" of but for causation and "[t]emporal proximity, standing alone, is not enough").

[101] *See Nassar,* 133 S.Ct. at 2525 ("It is ... textbook tort law that an action is not regarded as a cause of an event if the particular event would have occurred without it."); *see also Burrage v. United States,* 134 S. Ct. 881, 888 (2014) (discussing *Nassar's* but-for test, and explaining that but-for causation can be shown when two or more factors combine only "so long as the other factors alone would not have done so").

cannot establish the second element of her *prima facie* case—an adverse employment action.[102]

The Supreme Court has defined an adverse employment action as "a tangible employment action [which] constitutes a significant change in employment status such as hiring, firing, failure to promote, reassignment with significantly different responsibilities causing a significant change in benefits."[103]  A plaintiff "must show a *serious and material* change in the terms, conditions, or privileges of employment" to establish an adverse employment action.[104] Additionally, in the context of a retaliation claim, a *materially* adverse action "means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[105]

Here, Plaintiff claims she received her first poor performance review, in retaliation for filling an EEOC complaint.  This Circuit has held "a poor performance evaluation" that affects an employee's compensation can constitute an adverse employment action.[106] However, Plaintiff does not show how the poor performance review affected her—she presents no information as to a material change in the terms,

---

[102] It is unclear if Plaintiff asserts that her demotion was due to filing an EEOC charge. However, to the extent Plaintiff argues her demotion was related to her EEOC charge, the record does not support her claim. She was demoted on April 29, 2014 and filed her EEOC claim on May 5, 2014.
[103] *Burlington Industr. v. Ellerth*, 534 U.S. 742, 761 (1998).
[104] *Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original).
[105] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).
[106] *Crawford v. Carroll*, 529 F.3d 961, 971 (11th Cir. 2008) (citing *Gillis v. Georgia Department of Corrections*, 400 F.3d 883,888 (11th Cir. 2005); *but see Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1241 (11th Cir. 2001) (noting "criticisms of an employee's job performance—written or oral—that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit").

conditions, or privileges in her employment. Indeed, Plaintiff states neither the performance evaluation nor its contents were ever discussed with her, and she never signed it.[107] Therefore, because Plaintiffs' evaluation would not dissuade an employee from engaging in a protected activity, the Court finds it does not constitute an adverse employment action. However, even if Plaintiff could make out her *prima facie* case, for the same reasons explained above regarding her complaint to Dr. Smith, she fails to meet her ultimate burden of but-for causation.

Therefore, because Plaintiff has failed to establish her claims of retaliation, Defendants are entitled to judgment as a matter of law on all of Plaintiff's claims.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Summary Judgment [Doc. 22].

**SO ORDERED,** this 15th day of July, 2016.

S/ C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

JRF/ssh

---

[107] Pl's Stat. of Facts [Doc. 24] at 13.